IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ADOBE SYSTEMS INCORPORATED,

   Plaintiff,

 v.

COFFEE CUP PARTNERS, INC.,
formerly known as WOWZA MEDIA
SYSTEMS, INC.; and WOWZA MEDIA
SYSTEMS, LLC,

   Defendants.

No. C 11-2243 CW

ORDER GRANTING IN
PART, AND DENYING
IN PART,
PLAINTIFF'S MOTION
TO STRIKE OR
DISMISS (Docket
No. 40)

————————————————————/

 Plaintiff Adobe Systems Incorporated moves to strike or dismiss certain counterclaims and affirmative defenses raised by Defendants Coffee Cup Partners, Inc., formerly known as Wowza Media Systems, Inc., and Wowza Media Systems, LLC (collectively, Wowza) in the Answer and Amended Counterclaims (AAC) to Adobe's Second Amended Complaint (2AC) and the Answer and Counterclaims to Adobe's Third Amended Complaint (3AC).[1]  Wowza opposes the motion.

---

 [1] Adobe originally named Wowza Media Systems, Inc. as the sole Defendant in this action.  Docket No. 1.  After briefing and the hearing on the instant motion took place, and while it remained under submission, Wowza Media Systems, Inc. underwent a corporate restructuring during which it was renamed Coffee Cup Partners, Inc. and Wowza Media Systems, LLC was created and assumed all assets and liabilities from Wowza Media Systems, Inc. Docket No. 77, at 2.

 Because of the corporate restructuring, the parties stipulated to rename Wowza Media Systems, Inc. as Coffee Cup Partners, Inc. and to add Wowza Media Systems, LLC as a Defendant in this action.  Id.  The Court granted the stipulation and directed Adobe to file an amended complaint pursuant Civil Local Rule 10-1.  Docket No. 79.

United States District Court
For the Northern District of California

Having considered the arguments made by the parties in their papers and at the hearing on this motion, the Court GRANTS Adobe's motion in part and DENIES it in part.

BACKGROUND

Adobe develops and distributes software used to send content over the Internet using an integrated set of technology called the Adobe Flash Platform.  Adobe uses its Real-Time Messaging Protocol (RTMP) to transmit audio, video and data content between its Flash Media Server and its Flash Players.  Encrypted RTMP (RTMPe) is an enhanced version of RTMP that allows for the secure transfer of information.

Adobe alleges that implementations of RTMP and RTMPe are covered by certain patents it owns, including U.S. Patent Number 7,272,658 (the '658 Patent) issued on September 18, 2007, U.S. Patent Number 7,587,509 (the '509 Patent) issued on September 8, 2009, and U.S. Patent Number 8,065,426 (the '426 Patent) issued on November 22, 2011.  Adobe also alleges that implementations of RTMPe are also covered by U.S. Patent Number 7,961,878 (the '878

---

Pursuant to the Court's direction, Adobe filed the 3AC. Docket No. 83. Defendants then filed their Answer and Counterclaims to the 3AC.  Docket No. 102.

The Answer and Counterclaims to the 3AC differ from the AAC to the 2AC only in that they address both Defendants, instead of only Wowza Media Systems, Inc.  Defendants maintain without amendment the counterclaims and affirmative defenses that are the subject of the pending motion.  Thus, the Court's discussion of the counterclaims and affirmative defenses in the AAC to the 2AC applies with equal force to the corresponding counterclaims and affirmative defenses asserted in response to the 3AC.  For simplicity, the Court uses Wowza to refer to Wowza Media Systems, Inc., which was the sole Defendant entity in existence at all times relevant to the resolution of this motion and was the predecessor-in-interest to both current Defendants.

United States District Court
For the Northern District of California

Patent) issued on June 14, 2011 and U.S. Patent Number 8,051,287
(the '287 Patent) issued on November 1, 2011.

Wowza is a streaming media server software company.  It
developed its own versions of RTMP and RTMPe.  It has included
RTMP in what is now known as Wowza Media Server (WMS) since April
2006 and RTMPe since July 2008.

Wowza alleges that Adobe has known about its use of RTMP in
WMS since at least April 2007.  AAC 26 ¶ 14;[2] Stubenvoll Decl.
¶ 7.  Wowza also states that it has engaged in talks with Adobe to
discuss "potential business arrangements" since October 2007,
during which "Adobe's words and actions suggested" that "Wowza was
free to support the RTMP protocol for streaming media" and that
"Adobe never suggested that Wowza's support of the RTMP protocol
constituted a violation of any Adobe right."  AAC 26 ¶ 15.  Wowza
offers a declaration stating, "Wowza's security measures do not
circumvent any of Adobe's security measures, particularly those
associated with RTMPe."  Stubenvoll Decl. ¶ 8.  While the
declaration states that its security measures themselves do not
circumvent Adobe's security measures, the declaration is silent as
to whether Wowza, in developing and implementing its RTMPe,
circumvented Adobe's security measures.

On January 20, 2009, Adobe issued a press release stating
that it would be releasing the RTMP protocol to the public as an
open standard during the first half of 2009.  The press release
stated in part,

---

[2] Because Wowza restarts its paragraph numbering several
times in the AAC, the Court provides page and paragraph numbers
for all citations to this document for clarity.

United States District Court
For the Northern District of California

> To benefit customers who want to protect their content, the open RTMP specification will not include Adobe's unique secure RTMP measures, nor will the license that accompanies the specification allow developers to circumvent such measures. However, developers will be free to use their own technological measures to secure content. The RTMP specification does not provide any requirement or restrictions on a developer's own measures to secure content.

Stubenvoll Decl. ¶ 5, Ex. 1.

In April 2009, Adobe openly licensed its RTMP specification to users under the RTMP Specification License. In the License, Adobe grants users "a non-exclusive, royalty-free, non-transferable, non-sublicensable, personal, worldwide license under Adobe's Essential Claims to make, have made, use, sell, offer to sell, import and distribute Compliant Implementations." 2AC, Ex. A. The License provides that certain uses are prohibited, including "any technology that circumvents technological measures for the protection of audio, video and/or data content, including any of Adobe's secure RTMP measures." Id. The License defines "Compliant Implementations" to include the "portion of an application, product, or service that defines, creates or processes data compliant with the requirements expressly stated in the RTMP Specification," and provides a link to Adobe's RTMP Specification. Id.

On December 18, 2009, Adobe sent Wowza a letter, stating in part,

> We understand that Wowza has distributed the Wowza Media Server with support for Adobe's secure RTMP measures, including the RTMPe specification. Such support for RTMPe is protected by Adobe's intellectual property rights, including but not limited to United States Patent Nos. 7,587,509 and 7,272,658.

AAC 27-28 ¶ 20. Adobe offered to negotiate providing a license to Wowza for its use of RTMPe. Id. Adobe requested a reply by

4

December 31, 2009 and stated, "We can provide no assurances that a license to Adobe intellectual property for implementation of RTMPe will be available to Wowza after December 31, 2009." Id.  Adobe further asserted that it "reserves all of its rights, remedies, and claims concerning this matter." Id.

On December 29, 2009, Wowza responded to Adobe's letter, stating that it had not previously heard that the '509 and '658 patents covered the RTMPe specification and asking which patent claims covered that specification or the RTMP specification.  AAC 28 ¶ 21.  Wowza also asked that Adobe confirm the "understanding that all RTMP patent claims are licensed under the publically [sic] available RTMP Specification License" published in April 2009.  Id.

On January 8, 2010, Adobe responded, seeking to set up a time to continue licensing negotiations, in a letter with a heading reading, "SUBJECT TO FRE 408 AND OTHER SIMILAR STATE RULES." Hatch Decl. ¶ 8, Ex. C.[3]  In the letter, Adobe stated, "Wowza's implementation of RTMPe is not licensed under the RTMP Specification License because it is not compliant with the RTMP Specification.  Additionally, the RTMPe specification was never published or licensed by Adobe, and thus any related intellectual property rights therein are not licensed under the RTMP Specification License."  ACC 28-29 ¶ 22; Hatch Decl. ¶ 8, Ex. C.  Adobe continued, "We are willing to discuss the other questions

---

[3] Adobe requests, and Wowza does not oppose, that the Court take judicial notice of the full contents of this letter, because it is excerpted in Wowza's AAC and incorporated by reference therein.  The Court grants Adobe's request.

United States District Court
For the Northern District of California

you raised at our next meeting," and "This letter does not provide an exhaustive list of Adobe's positions concerning this matter." Hatch Decl. ¶ 8, Ex. C.  Adobe also stated that

> in anticipation of our discussions this letter confirms that in addition to the limitations provided for by FRE 408 and similar state rules, all of our discussions, communications, and negotiations will be confidential and will not be disclosed to any third-parties.  The parties further acknowledge that any statements made and any information provided orally or in writing during our discussions are to be used solely for [licensing] purposes, and are not admissible as evidence, and cannot be used by either party or by any related entity for any other purpose or in any proceeding.

Id.  Adobe made clear that its attorneys would be present at future meetings and that Wowza's attorneys were also welcome to attend.  Id.  Adobe again asserted that it "reserves all of its rights, remedies, and claims concerning this matter."  Id.  The letter was countersigned by Wowza on January 11, 2010, with no limitation placed on its assent.  Id.  In its AAC, Wowza alleges that, by not directly responding to the question about RTMP in this letter, "Adobe tacitly represented that RTMP is an open standard."  AAC 29 ¶ 23.

During its discussions with Wowza before this lawsuit, Adobe identified two patents that Wowza believes relate to RTMP, but that Wowza does not believe relate to RTMPe.  Stubenvoll Decl. ¶ 8.  "Adobe refused to identify a single patent claim of any issued or pending patent that teaches any aspect of RTMPe as distinguished from RTMP."  Id.

On May 6, 2011, Adobe initiated the instant lawsuit against Wowza.  In its original complaint, Adobe brought claims against Wowza for infringement of the '509 and '658 patents by using RTMP and RTMPe in WMS, false advertising and unfair competition.  Adobe

alleges that Wowza's use of RTMPe is unlicensed, that the open RTMP specification did not disclose the requirements for enabling a RTMPe connection with that technology, and that, in developing and implementing its RTMPe, Wowza has violated the terms of the RTMP License, including the requirement not to circumvent Adobe's secure RTMP measures, and is therefore not authorized under the License for its use of RTMP.

On May 26, 2011, Wowza filed its answer to Adobe's complaint and asserted counterclaims against Adobe, seeking declarations of invalidity and non-infringement of the '509 and '658 patents and claiming that it has a license under the RTMP Specification License to use the technology claimed in the '509 and '658 patents.

On June 20, 2011, Adobe filed its first amended complaint, adding a claim alleging that Wowza had also infringed the '878 patent.

On July 22, 2011, Wowza filed an answer to Adobe's first amended complaint, adding requests for declarations of invalidity and non-infringement of the '878 patent.

On October 11, 2011, this Court held a case management conference and set that day as the deadline to add additional parties or claims. At the time, the Court stated that, after that day, the parties would "need to get a stipulation or file a motion for leave to amend your complaint" and that, if the parties found something to add, they could "always still move for leave to amend." Fliesler Decl. ¶ 2, Ex. 1, Tr. 4:9-10, 5:3-4.

On November 15, 2011, Adobe emailed Wowza, seeking a stipulation to amend the complaint to assert claims based on the

recently issued '287 patent.  Hatch Decl. ¶ 4, Ex. A, at 6.[4]  On
November 17, 2011, Wowza responded, stating that it did not
necessarily oppose the amendment but asking for a modification of
the schedule of the Patent Local Rules and that Adobe not keep
adding additional patents.  Id. at 5.  On November 23, 2011, Adobe
emailed again, stating that the '426 patent had just been issued,
asking to amend to add both the '426 and '287 patents, and
offering to agree not to assert any other patents or causes of
action in the litigation, as long as Wowza agreed to the same,
beyond the same type of claims for the new patents as those
already made against the already included patents.  Id.  On
November 28, 2011, Wowza emailed Adobe, agreeing to the
stipulation, but stating, "As it is quite early in the discovery
process, Wowza must reserve its right to assert any additional
claims it may have against Adobe that may arise during the
litigation."  Id. at 4.  Adobe responded, "If Wowza is reserving
the right to assert additional claims, then Adobe must do the
same."  Id. at 3-4.  Wowza responded, "We are ok with both parties
having the right to assert later claims that may arise during the
discovery process."  Id.  Later that day, Adobe emailed, "As we
just discussed by the phone, Wowza will agree to the stipulation
without any provision regarding additional claims."  Id. at 2-3.

On November 30, 2011, the parties filed a stipulation to
allow Adobe to file the 2AC to add claims for infringement of the
'426 and '287 patents, and to allow Wowza to file an answer to the

---

[4] Wowza acknowledged that this exhibit contained true and
correct copies of the email communications between the parties
regarding the stipulation.  Fliesler Decl. ¶ 7.

United States District Court
For the Northern District of California

2AC within ten days after Court approval of the stipulation.  The stipulation contained no provision regarding the filing of additional claims by either party.  The Court approved the stipulation on December 2, 2011.  Adobe filed the 2AC on December 13, 2011.

On December 12, 2011, Wowza filed its answer to the 2AC.  In its answer, Wowza added requests for declarations of invalidity and non-infringement of the '426 and '287 patents and that it had a license to the '426 patent.  Wowza also added additional counterclaims against Adobe for fraud, violation of the Sherman Act, 15 U.S.C. § 2, and unfair competition under California law.  These additional claims are based on the April 2009 issuance of the RTMP License, the parties' communications on December 18, 2009, December 29, 2009 and January 8, 2010, and Adobe's filing of the instant lawsuit asserting claims for infringement of the patents related to RTMP.  Wowza also asserted new affirmative defenses for prosecution history laches, patent exhaustion and failure to mark.

DISCUSSION

Adobe moves to strike Wowza's counterclaims for fraud, violation of § 2 of the Sherman Act and unfair competition, and its new affirmative defenses, as improperly asserted after the Court's deadline to add new claims, without leave of Court to do so.  Adobe also moves to dismiss the counterclaims for failure to state a claim.  It further argues that the common law fraud and unfair competition counterclaims are barred by the state law litigation privilege and that the Sherman Act counterclaim is barred by the Noerr-Pennington doctrine.  See United Mine Workers

United States District Court
For the Northern District of California

of America v. Pennington, 381 U.S. 657, 669 (1965); Eastern

Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365

U.S. 127 (1961).  Finally, Adobe moves to strike the common law

fraud and unfair competition claims under California's

anti-Strategic Lawsuit Against Public Participation (anti-SLAPP)

statute, Cal. Code Civ. Proc. § 425.16(b).

I.   Motion to Strike New Claims as Unauthorized Amendments

Adobe argues that Wowza's new affirmative defenses and new

counterclaims for fraud, violation of the Sherman Act, and unfair

competition should be stricken, because they were improperly

asserted without leave of Court in the AAC and because there is

not good cause under Federal Rule of Civil Procedure 16 to allow

them to be asserted after the court-set deadline.  In turn, Wowza

argues that it had a right to assert the new claims in response to

Adobe's 2AC and that, if it did not, it had good cause to do so

after the deadline.

A. Amendment as a Matter of Right

The parties dispute the scope of amendments to answers in

response to amended complaints that is permitted by law.  The

parties' November 30, 2011 stipulation was silent as to the scope

of Wowza's response to the new 2AC.

As the parties acknowledge, no federal appellate court has

addressed this issue.  District courts across the country have

taken several different approaches, which can generally be

classified as permissive, moderate or narrow.  So. New England

Telephone Co. v. Global Naps, Inc., 2007 WL 521162, at *1-3 (D.

Conn.) (summarizing approaches).  Under the permissive approach,

which Wowza urges the Court to adopt, "once a plaintiff amends its

complaint, a defendant is entitled to amend its answer as of right, regardless of the scope of the change in the amended complaint," even with "eleventh-hour additions." <u>Uniroyal Chem. Co., Inc. v. Syngenta Crop Prot., Inc.</u>, 2005 WL 677806, at *2 (D. Conn.) (quoting <u>Am. Home Prod. Corp. v. Johnson & Johnson</u>, 111 F.R.D. 448, 453 (S.D.N.Y. 1986)).  Under the narrow approach, "a party is only entitled to respond as of right to an amended complaint if its answer is strictly confined to the new issues raised by the amended complaint." <u>So. New England Telephone Co.</u>, 2007 WL 521162, at *2 (citing <u>Wechsler v. Hunt Health Sys., Ltd.</u>, 186 F. Supp. 2d 402, 415 (S.D.N.Y. 2002)).  Finally, the moderate approach, which Adobe supports, "permits the defendant to respond to an amended complaint that changes the theory or scope of the case by adding counterclaims that similarly change the theory or scope of the case." <u>Uniroyal</u>, 2005 WL 677806, at *2.

The few courts within the Ninth Circuit and this district that have addressed the issue have adhered to the moderate approach.  <u>See Vista Eng. Tech., LLC v. Premier Tech., Inc.</u>, 2010 U.S. Dist. LEXIS 51944, at *3-5 (D. Idaho); <u>St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.</u>, 2007 U.S. Dist. LEXIS 39085, at *3-5 (W.D. Wash.); <u>Synopsys, Inc. v. Magma Design Automation, Inc.</u>, Case No. 04-3923, Docket No. 459, at *4-5 (N.D. Cal. Oct. 19, 2005) (Chesney, J.) (adopting the view that "an answer containing new defenses or counterclaims may be filed without leave only when the amended complaint changes the theory or scope of the case, and then, the breadth of the changes in the amended response must reflect the breadth of the changes in the amended complaint") (internal quotations omitted).  The moderate approach is the most

equitable and manageable approach.  In contrast, the permissive approach would allow the pleadings to be re-opened repeatedly and without limitation, even in response to the most mundane of amendments of complaints.  See Vista Eng. Tech., 2010 U.S. Dist. LEXIS 51944, at *4 n.1 (quoting Equal Emp't Opportunity Comm'n v. Morgan Stanley & Co., Inc., 211 F.R.D. 225, 227 (S.D.N.Y. 2002)) ("If every amendment, no matter how minor or substantive, allowed defendants to assert counterclaims or defenses as of right, claims that would otherwise be barred or precluded could be revived without cause.").  Accordingly, the Court adopts the moderate approach.

Adobe's amendment, by adding additional patents to the case, changed the theory or scope of the litigation.  Thus, Wowza was also permitted to add counterclaims that similarly changed the theory or scope of the case.  However, the breadth of those changes is limited to the breadth of the changes made in Adobe's amendment.  Adobe's new allegations were virtually identical to the old ones.  In the first amended complaint, Adobe had already accused Wowza of infringing its patents through the development and implementation of RTMP and RTMPe.  Wowza's new counterclaims, which presented completely different facts and theories of liability that were not otherwise a part of this case, exceeded the breadth of Adobe's alterations.  Wowza therefore could not assert them as a matter of right.  However, to the extent that Wowza's new affirmative defenses were presented as defenses to Adobe's new claims for infringement of the '426 and '287 patents, and not to the '658, '509 and '878 patents, which were already asserted in the first amended complaint, these new affirmative

defenses addressed new issues raised by the 2AC and would be permissible even under the narrow approach.

B. Amendment with Leave of Court

If Wowza would nevertheless have been granted leave, on its motion, to amend its answer to assert the new counterclaims and the new affirmative defenses to the claims for infringement of the '658, '509 and '878 patents, these need not be stricken. See St. Paul Fire, 2007 U.S. Dist. LEXIS 39085, at *6 ("It would unduly waste time and resources to strike the counterclaim and require [the defendants] to file a motion raising the same issues already before the Court.").

Under Rule 16(b), "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. Pro. 16(b). Where a schedule has been filed, a party's ability to amend the pleadings is "governed by Rule 16(b), not Rule 15(a)." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992). Therefore, where, as here, a party seeks to amend a pleading after the date specified in a scheduling order, it must first show "good cause" for the amendment under Rule 16(b). Id.

In order to determine whether good cause exists, courts primarily consider the diligence of the party seeking the modification. Id. at 609; see also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000). "[N]ot only must parties participate from the outset in creating a workable Rule 16 scheduling order but they must also diligently attempt to adhere to that schedule throughout the subsequent course of the litigation." Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D.

Cal. 1999).  A party moving for an amendment to a scheduling order must therefore show it was diligent in assisting the Court to create a workable schedule at the outset of litigation, that the scheduling order imposes deadlines that have become unworkable notwithstanding its diligent efforts to comply with the schedule, and that it was diligent in seeking the amendment once it became apparent that extensions were necessary.  Id. at 608.

If good cause is shown, the party must next demonstrate that the amendment is proper under Rule 15.  Johnson, 975 F.2d at 608. Under that rule, courts consider five factors when assessing the merits of a motion for leave to amend: undue delay, bad faith, futility of amendment, prejudice to the opposing party and whether the plaintiff has previously amended the complaint.  Ahlmeyer v. Nev. Sys. of Higher Educ., 555 F.3d 1051, 1055 n.3 (9th Cir. 2009).  Although these five factors are generally all considered, "futility of amendment alone can justify the denial of a motion." Id. at 1055.

Wowza has not demonstrated that it acted with diligence in seeking to add the new counterclaims and affirmative defenses, because the facts underlying them were apparent by the time that Wowza filed its initial answer on May 26, 2011.  Wowza does not dispute that it had all of the facts necessary to assert the claims by that time or that it had already contemplated, at the time it filed its first answer, that the RTMP License might provide a license for its use of RTMP, which is a central part of its new counterclaims.  Instead, Wowza responds only that "Adobe's original Complaint was filed out of the blue" and that there were "only five months between the filing of the original Complaint"

14

and the CMC, and that it filed its amended answer only sixty-one days after the CMC, shortly after it first "contemplated" the new counterclaims.  Opp. at 11.  As Wowza acknowledges, there were seven months between the dates Adobe filed this suit and Wowza filed the AAC.  Wowza gives no explanation of why, with diligence, it could not have thought of the new counterclaims and affirmative defenses sooner, even though it already knew of the factual predicates therefore.  Accordingly, Wowza has failed to meet the good cause requirement of Rule 16.  Further, as discussed below, Wowza's new counterclaims would be subject to successful motions to dismiss and to strike under the anti-SLAPP statute, and would therefore be futile.  Thus, the Court grants Adobe's motion to strike the new counterclaims and the new affirmative defenses to the claims for infringement of the '658, '509 and '878 patents.

II.   Motion to Dismiss Pursuant to Rule 12(b)(6)

     A. Legal Standard

     A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a

United States District Court
For the Northern District of California

cause of action, supported by mere conclusory statements," are not taken as true.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint."  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion.  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  Further, the Court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994).

B. Discussion

1. Sherman Act counterclaim

Adobe first argues that Wowza's Sherman Act counterclaim is based on Adobe's filing of the suit alleging infringement against Wowza by using the RTMP technology and is barred by the Noerr-

United States District Court
For the Northern District of California

Pennington doctrine.  This doctrine provides that a defendant is immune from liability for claims based on its exercise of its First Amendment right to petition the government for redress of grievances.  Sosa v. DIRECTV, Inc., 437 F.3d 923, 929 (9th Cir. 2006).  See also U.S. Const. amend. 1 ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances.").

Wowza did not dispute in its opposition or at the hearing that the Sherman Act counterclaim burdened Adobe's First Amendment rights.  Instead, Wowza responds that the counterclaim falls within the sham litigation exception to the Noerr-Pennington doctrine.

This sham litigation exception was "developed to prevent the immunization of conduct that used 'governmental process . . . as an anticompetitive weapon.'"  Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 643-44 (9th Cir. 2009) (quoting Kottle v. Nw. Kidney Ctrs., 146 F.3d 1056, 1060 (9th Cir. 1998).  Under this exception, where "the alleged anticompetitive behavior consists of bringing a single sham lawsuit (or a small number of such suits), the antitrust plaintiff must demonstrate that the lawsuit was (1) objectively baseless, and (2) a concealed attempt to interfere with the plaintiff's business relationships" instead of to achieve a legal remedy.  Kottle, 146 F.3d at 1060 (citing, among others, Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60-61 (1993)).  Thus, to escape Noerr-Pennington immunity, the party bringing the claim that burdens the other's First Amendment rights must demonstrate "both the objective and the subjective components of a sham," that the

purportedly sham earlier lawsuit both could not have been reasonably resolved in favor of the party that brought it and that it is not "sincerely and honestly felt or experienced" by that party. Prof'l Real Estate Investors, 508 U.S. at 61-62.

Because this matter "arose on a motion to dismiss," when the sham litigation exception is assessed, Wowza's "allegations must be assumed true." Kearney, 590 F.3d at 646. See also Winters v. Jordan, 2010 U.S. Dist. LEXIS 72686, at *28 (E.D. Cal.), aff'd 2012 U.S. App. LEXIS 14067 (9th Cir.) (considering pleadings and judicially noticeable documents in evaluating the sham litigation exception). The Ninth Circuit has established a heightened pleading requirement for these allegations, because "[w]hen a plaintiff seeks damages . . . for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." Kearney, 590 F.3d at 647 (quoting Kottle, 146 F.3d at 1063). See also EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp., 711 F. Supp. 2d 1074, 1083 (C.D. Cal. 2010) (applying a heightened pleading standard to allegations of sham litigation); Cal. Pharm. Mgmt., LLC v. Redwood & Cas. Ins. Co., 2009 U.S. Dist. LEXIS 126982, at *17-18 (C.D. Cal.) (same); Teragren, LLC v. Smith & Fong Co., 2008 U.S. Dist. LEXIS 36968, at *8 (W.D. Wash.) (same).

A claim is objectively baseless if "no reasonable litigant could realistically expect success on the merits." Prof'l Real Estate Investors, Inc., 508 U.S. at 60. In the AAC, Wowza alleges it has not infringed any valid claims of the asserted patents,

**United States District Court**
For the Northern District of California

that it "independently developed its versions of RTMP and RTMPe
. . . without any access to Macromedia's or Adobe's source code
for the RTMP and RTMPe technology" [5] and that it "has not
'circumvented' any technological protection.  AAC 2, 12 ¶ 21, 26
¶ 10.  Wowza also contends that it "has complied and currently
complies with all terms of the RTMP Specification License" and
that none of its "actions are a prohibited use as defined by the
RTMP Specification License."  AAC 12 ¶ 21, 29 ¶ 25.  Wowza further
alleges that "Adobe knows that Wowza has complied and currently
complies with all terms of the RTMP Specification License" and
that Adobe nonetheless brought "an action alleging infringement of
the RTMP Patents with full knowledge that it licensed any
potentially relevant claims therein to Wowza."  AAC 29 ¶ 25, 31
¶ 40.  At this stage, Wowza has alleged sufficiently that Adobe
lacked a reasonable expectation of success on its claims for
infringement of the RTMP patents.

Having found that Wowza has sufficiently alleged that the
challenged litigation is objectively meritless, the Court must
next consider whether Wowza has sufficiently alleged that Adobe
brought the litigation with the requisite improper subjective
intent.  Prof'l Real Estate Investors, Inc., 508 U.S. at 60.
Under this prong, "the court should focus on whether the baseless
lawsuit conceals an attempt to interfere directly with the
business relationships of a competitor through the use of the
governmental process--as opposed to the outcome of that process--

---

[5] In their pleadings, the parties agree that Adobe acquired
Macromedia in 2005.  2AC ¶ 20; AAC 8 ¶ 10.

**United States District Court**
For the Northern District of California

as an anticompetitive weapon." Id. at 60-61.  To meet this requirement, Wowza would have to allege that Adobe's pursuit of the lawsuit was "not merely baseless, but aimed at interfering with their business by, for example, sapping their financial resources or distracting their attention." Freeman v. Lasky, Haas & Cohler, 410 F.3d 1180, 1185 (9th Cir. 2005).  While Wowza alleges that the lawsuit is baseless, that Adobe knew that it was baseless and that the result of the lawsuit was to injure Wowza's business by requiring it to incur costs in defending the suit, Wowza did not allege that Adobe had brought the lawsuit with the intent of doing this or of interfering with its business in any other particular manner.  Accordingly, Wowza has not properly alleged the subjective component of sham litigation.

Even if Wowza had alleged sufficiently both components of sham litigation, it is also required to allege the elements of a substantive antitrust claim.  See Prof'l Real Estate Investors, Inc., 508 U.S. at 61 ("Proof of a sham merely deprives the defendant of immunity; it does not relieve the plaintiff of the obligation to establish all other elements of his claim.").  "Section 2 of the Sherman Act makes it unlawful to monopolize, or attempt to monopolize, . . . any part of the trade or commerce among the several States." Pac. Bell Telephone Co. v. linkLine Communs., Inc., 555 U.S. 438, 447 (2008) (internal citations omitted).  To prove attempted monopolization, a plaintiff must show "'(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" Cascade Health Solutions v. PeaceHealth, 515 F.3d 883, 893 (9th

Cir. 2008) (quoting Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993)).  In addition to these elements, private party plaintiffs seeking damages for antitrust violations must also demonstrate antitrust injury.  Rebel Oil Co. v. Atl. Richfield Co., 51 F.3d 1421, 1433 (9th Cir. 1995).

"Antitrust injury is made up of four elements: (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." Glen Holly Entm't, Inc. v. Tektronix Inc., 352 F.3d 367, 372 (9th Cir. 2003). To demonstrate antitrust injury, a complaining party must show "injury to the market or to competition in general, not merely injury to individuals or individual firms[.]" McGlinchy v. Shell Chem. Co., 845 F.2d 802, 812 (9th Cir. 1988); see also Brown Shoe Co. v. United States, 370 U.S. 294, 320 (1962) (the purpose of antitrust laws is the "protection of competition, not competitors"). Generally, to do this, the pleader "must include proof of the relevant geographic and product markets and demonstration of the restraint's anticompetitive effects within those markets." Les Shockley Racing, Inc. v. National Hot Rod Asso., 884 F.2d 504, 508 (9th Cir. 1989). Further, "'the pleader may not evade these requirements by merely alleging a bare legal conclusion; if the facts do not at least outline or adumbrate a violation of the Sherman Act, the plaintiff[] will get nowhere merely by dressing them up in the language of antitrust.'" Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 736 (9th Cir. 1987) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)).  See also Les Shockley Racing, 884

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

F.2d at 507 (a claimant may not successfully allege injury to competition by merely reciting "the bare legal conclusion that competition has been restrained unreasonably").

Wowza has failed to allege antitrust injury. Its only allegation of harm to the market, as opposed to merely harm to itself, is a conclusory one, that Adobe's lawsuit asserting the RTMP patents will result in "reduced competition and increased prices," with no elaboration or additional factual allegations. AAC 31 ¶ 43. Wowza thus has failed to allege "more than the sweeping legal conclusion" that Adobe's purported anticompetitive actions have "caused injury to competition in the relevant market," as required to survive a motion to dismiss. Nat'l Flood Servs. v. Torrent Techs., Inc., 2006 U.S. Dist. LEXIS 34196, at *24 (W.D. Wash.). While Wowza alleges that its own business will be harmed by having to defend against the litigation, this will not, "standing alone, show injury to competition in the market as a whole." Les Shockley Racing, 884 F.2d at 509. Wowza has not alleged any facts that suggest that "the relevant market is both narrow and discrete and the market participants are few." Id. at 508-09. Accordingly, this is not a case in which injury to one market competitor would be sufficient to show injury to competition. See id.; see also Chip-Mender, Inc. v. Sherwin-Williams Co., 2006 U.S. Dist. LEXIS 2176, at *15-16 (N.D. Cal.) (finding that plaintiff had "not adequately antitrust injury" where the only injury alleged was "its own payment of its attorneys' fees in defending against" patent claims).

Accordingly, the Court GRANTS Adobe's motion to dismiss the Sherman Act counterclaim. Wowza may move for leave to re-assert

this counterclaim, provided that it is able to show good cause under Rule 16 and that it can remedy truthfully the deficiencies identified above.

### 2. State law counterclaims

#### a. Litigation privilege

Adobe argues that Wowza's fraud and unfair competition counterclaims are barred by the California litigation privilege. California Civil Code section 47(b) provides that communications made in or related to judicial proceedings are absolutely immune from tort liability. The California Supreme Court has explained that the purpose of the privilege is "to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." Silberg v. Anderson, 50 Cal. 3d 205, 213 (1990). "The litigation privilege applies to any communications (1) made in a judicial proceeding; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; (4) that have some connection or logical relation to the action." Sharper Image Corp. v. Target Corp., 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) (citing Silberg, 50 Cal. 3d at 212). The privilege also applies to "prelitigation communication" that "relates to litigation that is contemplated in good faith and under serious consideration." Action Apartment Ass'n Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1251 (2007). See also Kearney, 590 F.3d at 650 (allegations of "conduct prior to the litigation . . . may be privileged if reasonably related to the action"). Once these requirements are met, section 47(b) operates as an absolute privilege. Silberg, 50 Cal. 3d at 216. "Any doubt about whether the privilege applies is

United States District Court
For the Northern District of California

resolved in favor of applying it." <u>Kashian v. Harriman</u>, 98 Cal. App. 4th 892, 913 (2002).

Wowza suggests that litigation was not imminent at the time that Adobe's letters were mailed and thus sending these letters was not protected by the statute.  California courts have stated that, "although litigation may not have commenced, if a statement concerns the subject of the dispute and is made in anticipation of litigation contemplated in good faith and under serious consideration then the statement may be petitioning activity protected by section 425.16." <u>Neville v. Chudacoff</u>, 160 Cal. App. 4th 1255, 1268 (2008) (internal quotations and formatting omitted).  Citing <u>Neville</u>, Wowza suggests that pre-litigation communications can only qualify as petitioning activity if they were sent when litigation was "imminent" because the communications must be closely linked in time to filing suit. However, the court in <u>Neville</u> clearly stated that "imminent" did not refer to temporality, but instead to whether there was an "actual threat of impending litigation." <u>Id.</u> at 1268-69 (discussing <u>Edwards v. Centex Real Estate Corp.</u>, 53 Cal. App. 4th 15, 35-39 (1997)).

Here, Adobe's letters concerned the subject of the instant lawsuit and were to advance the goals of the litigation.  In the December 18, 2009 letter, Adobe made clear that it believed that Wowza's RTMPe protocol violated its intellectual property rights. Adobe reserved its "rights, remedies, and claims" and made clear that it was prepared to take other action to protect its intellectual property after December 31, 2009.  Similarly, in the January 8, 2010 letter, Adobe made clear that it believed that

United States District Court
For the Northern District of California

"Wowza's implementation of RTMPe is not licensed under the RTMP Specification License because it is not compliant with the RTMP Specification."  This is a restatement of Adobe's theory in the instant case that Wowza violated the terms of the RTMP license. Adobe informed Wowza that its counsel would be present at their future meetings and obtained Wowza's agreement that any information shared would be subject to Federal Rule of Evidence 408 and would not be used in potential future proceedings.  The "only reasonable inference" from these statements is that Adobe was contemplating litigation seriously and in good faith at the time that the letters were sent, if Wowza did not enter a licensing agreement with it.  Neville, 160 Cal. App. 4th at 1269. California courts deem "demand letters and like communications between litigants or their attorneys which are directed toward settlement of a pending or anticipated lawsuit" to be a useful step in the litigation process and to serve the purposes of the litigation, in satisfaction of the third and fourth prong of the Silberg test.  Rothman v. Jackson, 49 Cal. App. 4th 1134, 1148 (1996).  Thus, these letters fall within the scope of the litigation privilege.

Adobe's filing of its complaints in this lawsuit "obviously satisfy" the Silberg test.  See id. ("A party's pleadings obviously satisfy this test.").  Wowza argues that Adobe's filing of the instant lawsuit is nonetheless outside of the litigation privilege, because it was not initiated in good faith and is wrongful.  This, however, is unavailing.  In determining whether a publication falls within the litigation privilege, "the presence or absence of malice or good or bad faith is irrelevant to the

inquiry whether the litigation privilege is applicable." <u>Mansell</u> <u>v. Otto</u>, 108 Cal. App. 4th 265, 279 n.47 (collecting cases).  The California Supreme Court has made clear that the notion of good faith is relevant only to whether prelitigation communications fall within the scope of the privilege, because only such publications made with a "good faith intention to bring a suit" are protected.  See <u>Action Apartment Assn.</u>, 41 Cal. 4th at 1251. However, "publications which are made without a good faith belief in their truth . . . are protected as part of the price paid for affording litigants the utmost freedom of access to the courts." <u>Id.</u>

Thus, Wowza is barred by California's litigation privilege from using Adobe's letters or its filing of the instant lawsuit as the basis of Wowza's counterclaims for fraud and unfair competition.  However, Adobe's other alleged misconduct, the issuance of the press release and the open license, was not reasonably related to the Adobe's lawsuit.  Thus, the Court considers whether Wowza has stated a claim for fraud or unfair competition based on that alleged misconduct.

### b. Fraud counterclaim

Under California law, the elements of fraud are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." <u>Small v. Fritz Cos., Inc.</u>, 30 Cal. 4th 167, 173 (2003) (internal quotation marks and citations omitted).

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

**United States District Court**
For the Northern District of California

Federal Rule of Civil Procedure 9(b).  The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).  Scienter may be averred generally, simply by saying that it existed.  Id. at 1547; see Fed. R. Civ. Proc. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally").  Statements of the time, place and nature of the alleged fraudulent activities are sufficient, id. at 735, provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false."  In re GlenFed, Inc., Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Allegations of fraud based on information and belief usually do not satisfy the particularity requirements of Rule 9(b); however, as to matters peculiarly within the opposing party's knowledge, allegations based on information and belief may satisfy Rule 9(b) if they also state the facts upon which the belief is founded. Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987).

Wowza has not adequately plead that Adobe made a material misrepresentation.  In the AAC, Wowza states that "Adobe's words and actions directed to Wowza, Adobe's RTMP press release and the related Specification License individually and/or collectively constituted a representation by Adobe that RTMP is an open standard, and that Adobe would not assert implementation of that standard or that Wowza violated Adobe's rights."  AAC 27 ¶ 18. See also id. at 29 ¶ 28.

As to Adobe's "words and actions," Wowza generally avers that there were various meetings between Adobe and Wowza from 2007 through 2010 in which "Adobe's words and actions suggested" that "Wowza was free to support the RTMP protocol for streaming media." Id. at 26 ¶ 15.  To the extent that Wowza bases this on the letters, these claims are barred by the litigation privilege. Further, even if the litigation privilege were not a bar, Wowza has not sufficiently alleged how the letters were misrepresentative in this way.  Wowza pleads that, based on the January 8, 2010 letter, "Adobe tacitly represented that RTMP is an open standard by refusing to respond to Dave Stubenvall's request on December 29, 2009." Id. at 28-29 ¶¶ 22-23.  In that request, Stubenvall had asked Adobe to confirm that the use of RTMP was licensed under the publicly available RTMP License.  However, this is contradicted by the contents of the letters.  In its responsive letter, Adobe did respond that "Wowza's implementation of RTMPe" was outside of the terms of the RTMP license, which is in part the theory of its case here, that its positions were not fully addressed in the letter and that it was willing to discuss his inquiries further at their future meetings.  Id. at 28-29 ¶ 22. To the extent that Wowza bases its claims on other "words and actions," Adobe is correct that Wowza has not stated what these words and actions were, who said them, or when.

Wowza also has not adequately plead how the press release and the related specification license were misrepresentations.  In the AAC, Wowza alleges that these representations were false in that they told Wowza that "RTMP is an open standard and that Adobe would not file the present infringement lawsuit."  Id. at 29 ¶ 28.

United States District Court
For the Northern District of California

However, neither the press release nor the license, which are incorporated in the AAC by reference, includes an explicit promise not to sue.  Further, these documents state that RTMP is an openly licensed standard provided that certain conditions are met, and Wowza does not explain in the AAC how Adobe violated the promises made in those documents by suing it for violating the conditions. While Wowza alleges that Adobe knows that Wowza did not violate the conditions and thus that the lawsuit will not be found meritorious, this may make the lawsuit itself misrepresentative, not the press release and specification.  The filing of the lawsuit is privileged, as explained above.

Adobe also argues that Wowza's pleading makes "implausible" allegations.  In response, Wowza argues that it need not establish plausibility for a fraud claim at the pleading stage and that its counterclaim is plausible.  The Ninth Circuit has specifically held after the Supreme Court's decision in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), that "claims of fraud or mistake . . . must, in addition to pleading with particularity, also plead plausible allegations."  Cafasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1055 (9th Cir. 2011).  In this context, plausibility means that the pleading must state "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'"  Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)) (formatting in original).  See also Iqbal, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  "Where a complaint pleads facts that are

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. Iqbal, 129 S.Ct. at 1950 (internal citation, alteration, and quotation marks omitted).  Considering its pleading as a whole, Wowza's allegations do not permit the Court to infer more than the mere possibility that Adobe engaged in misconduct.

Accordingly, the Court GRANTS Adobe's motion to dismiss the fraud counterclaim.  Wowza may move for leave to re-assert this counterclaim, provided that it is able to show good cause under Rule 16 and that it can remedy truthfully the deficiencies identified above.  In doing so, Wowza may not base this claim on Adobe's pre-litigation correspondence or its filing of the instant lawsuit.

c. UCL counterclaim

California's Unfair Competition Law (UCL) prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state or local law may serve as the basis for a UCL claim.  Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994).  In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the

practice does not violate any law." <u>Olszewski v. Scripps Health</u>, 30 Cal. 4th 798, 827 (2003).

Wowza alleges that Adobe's "unlawful, unfair and/or fraudulent business practices" violate the UCL. AAC 32 ¶ 48. In its motion, Adobe argues that, to the extent that the UCL claim is premised on Wowza's fraud and antitrust claims, it fails for the reasons discussed above. In response, Wowza argues that its UCL claim is not just grounded in fraud and also alleges that Adobe's conduct was "unlawful" and "unfair." Opp. at 23 (citing AAC 23 ¶ 50). Wowza also argues that, to the extent that its UCL claim is grounded in fraud, it meets the pleading requirement by incorporating by reference its fraud claim.

In its UCL counterclaim, Wowza has alleged that Adobe committed "fraudulent business practices." AAC ¶ 48. Further, the specific allegations it made in its UCL counterclaim regarding unlawful and unfair activity merely repeat the same purportedly fraudulent conduct alleged in its other counterclaims. <u>See</u> <u>id.</u> at ¶ 50. Thus, Wowza was required to plead this counterclaim with particularity under Rule 9(b). <u>See</u> <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009). To the extent that Wowza may have intended to premise its counterclaim under the unfairness prong on Adobe's purportedly anti-competitive behavior, it has not plead sufficiently that the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws." <u>Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.</u>, 20 Cal. 4th 163, 187 (1999). Thus, Wowza's UCL counterclaims fails for the reasons discussed above regarding the fraud and Sherman Act counterclaims.

**United States District Court**
For the Northern District of California

    Wowza may move for leave to re-assert this counterclaim,
provided that it is able to show good cause under Rule 16 and that
it can remedy truthfully the deficiencies identified above
regarding the fraud and Sherman Act counterclaims.  In doing so,
Wowza may not base this claim on Adobe's pre-litigation
correspondence or its filing of the instant lawsuit.

III. Anti-SLAPP Motion

    Adobe also moves to strike Wowza's fraud and UCL
counterclaims under California's anti-SLAPP statute.  Although the
Court has already struck and dismissed these counterclaims, it
nonetheless considers the merits of Adobe's anti-SLAPP motion,
because the statute "mandates that 'a prevailing defendant on a
special motion to strike shall be entitled to recover his or her
attorney's fees and costs.'"  <u>Collins v. Allstate Indem. Co.</u>, 428
Fed. Appx. 688, 690 (9th Cir. 2011) (quoting Cal. Civ. Proc. Code
§ 425.16(c)(1) (reversing district court's denial of anti-SLAPP
motion as moot and remanding for consideration of the motion,
including attorney's fees)).

    A. Legal Standard

    California's anti-SLAPP statute provides,

    A cause of action against a person arising from any act
    of that person in furtherance of the person's right of
    petition or free speech under the United States
    Constitution or the California Constitution in
    connection with a public issue shall be subject to a
    special motion to strike, unless the court determines
    that the plaintiff has established that there is a
    probability that the plaintiff will prevail on the
    claim.

Cal. Civ. Proc. Code § 425.16(b)(1).  California anti-SLAPP

motions to strike are available to litigants proceeding in federal

court.  <u>Thomas v. Fry's Elecs., Inc.</u>, 400 F.3d 1206, 1206 (9th Cir. 2005).

Courts analyze these motions in two steps.  "First, the defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech."  <u>Mindys Cosmetics, Inc. v. Dakar</u>, 611 F.3d 590, 595 (9th Cir. 2010) (citation and internal quotation marks omitted).  "Second, once the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims."  <u>Id.</u>

"At [the] second step of the anti-SLAPP inquiry, the required probability that [a party] will prevail need not be high."  <u>Hilton v. Hallmark Cards</u>, 580 F.3d 874, 888-89 (9th Cir. 2009).  A plaintiff must show "only a 'minimum level of legal sufficiency and triability.'"  <u>Mindys</u>, 611 F.3d at 598 (quoting <u>Linder v. Thrifty Oil Co.</u>, 23 Cal. 4th 429, 438 n.5 (2000)).  The plaintiff need only "state and substantiate a legally sufficient claim."  <u>Mindys</u>, 611 F.3d at 598 (citation and internal quotation marks omitted).  In conducting its analysis, the "court 'does not weigh the credibility or comparative probative strength of competing evidence,' but 'should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'"  <u>Id.</u> at 599 (quoting <u>Wilson v. Parker, Covert & Chidester</u>, 28 Cal. 4th 811, 821 (2002)).

California law prohibits state courts from affording leave to amend following a grant of a motion to strike under the anti-SLAPP statute.  <u>See, e.g.</u>, <u>Simmons v. Allstate Ins. Co.</u>, 92 Cal. App.

**United States District Court**
For the Northern District of California

4th 1068, 1073-74 (2001).  However, federal district courts retain discretion to grant leave to amend, notwithstanding such a motion. See Greensprings Baptist Christian Fellowship Trust v. Cilley, 629 F.3d 1064, 1066 n.1 (9th Cir. 2010) (citing Verizon Del., Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir. 2004)).

B. Discussion

1. Arising From Protected Activity

Adobe argues that Wowza's counterclaims for fraud and unfair competition are subject to an anti-SLAPP motion, because these counterclaims arise from Adobe's filing of the instant lawsuit and the December 18, 2009 and January 8, 2010 letters asserting its patent rights in anticipation of litigation.  Wowza responds that the counterclaims were not based on the filing of the lawsuit, but were instead based on Adobe's other statements and actions, which purportedly communicated that "Wowza was licensed for RTMP, and therefore that Adobe would not sue Wowza for use of RTMP."  Opp. at 12.  In the AAC, Wowza alleges that these statements and actions consisted of the release of the public license and the December 18, 2009 and January 8, 2010 letters described above. AAC 27-29 ¶¶ 18-28.

Adobe argues that the letters were prepared in anticipation of litigation, because they identify the subject matter of this lawsuit and suggest that Adobe will pursue claims if Wowza does not obtain a license.  Acts covered under the anti-SLAPP statute include

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law,
>
> (2) any written or oral statement or writing made in connection with an issue under consideration or review

> by a legislative, executive, or judicial body, or any
> other official proceeding authorized by law,
>
> (3) any written or oral statement or writing made in a
> place open to the public or a public forum in connection
> with an issue of public interest, or
>
> (4) any other conduct in furtherance of the exercise of
> the constitutional right of petition or the
> constitutional right of free speech in connection with a
> public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16. "Communications 'preparatory to or in anticipation of commencing official proceedings' fall within the scope of § 425.16(e)(1) and (2)." Vanginderen v. Cornell Univ., 2009 U.S. Dist. LEXIS 303, at *11 (S.D. Cal.) (quoting Siam v. Kizilbash, 130 Cal. App. 4th 1563 (2005)). See also Briggs v. Eden Council for Hope & Opportunity, 19 Cal. 4th 1106, 1115 (1999) ("communications preparatory to or in anticipation of the bringing of an action or other official proceeding are . . . entitled to the benefits of section 425.16") (internal quotation marks omitted).

Courts "have looked to the litigation privilege as an aid in construing the scope of section 425.16, subdivision (e)(1) and (2) with respect to the first step of the two-step anti-SLAPP inquiry." Flatley v. Mauro, 39 Cal. 4th 299, 322-323 (2006). For the reasons already discussed, the Court concludes that the letters fall within the scope of activity protected under subdivisions (e)(1) and (2).

To the extent Wowza argues that, because it alleges Adobe made fraudulent statements in the letters in bad faith, the letters are outside of the scope of § 425.16(e)(1) and (2), this argument is unavailing. See Kearney, 590 F.3d at 649 ("The fact that the claims allege misconduct also does not keep Defendants' acts from being in furtherance of petitioning.").

The Court also finds that these causes of action "arise from" Adobe's initiation of the instant lawsuit.

Wowza contends that the filing of the lawsuit was "merely incidental" to the unprotected statements and actions. Opp. at 14. The California Supreme Court has held, "[T]hat a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such." Navellier v. Sletten, 29 Cal. 4th 82, 89 (2002) (citing City of Cotati v. Cashman, 29 Cal. 4th 69, 78 (2002)). Instead, "the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity." Id. (emphasis in original). See also id. at 90 (claims arise from protected litigation activity, when "but for" the litigation and the defendants' "actions taken in connection with that litigation, plaintiffs' present claims would have no basis"). "Incidental allegations regarding protected activity do not 'subject the cause of action to the anti-SLAPP statute.'" PrediWave Corp. v. Simpson Thacher & Bartlett LLP, 179 Cal. App. 4th 1204, 1219-1220 (2009) (quoting Martinez v. Metabolife Internat., Inc., 113 Cal. App. 4th 181, 188 (2003)). "Where, as here, a cause of action alleges the plaintiff was damaged by specific acts of the defendant that constitute protected activity under the statute, it defeats the letter and spirit of section 425.16 to hold it inapplicable" because other elements of the claim "may be proven without reference to the protected activity." Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP, 133 Cal. App. 4th 658, 674 (2005).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Here, in its fraud counterclaim, Wowza's only allegation of harm is that it was injured "by continuing to develop, offer, support, and maintain its WMS product with RTMP compatibility and then facing the present lawsuit." AAC 30 ¶ 33. Thus, it appears that Wowza would not be able adequately to plead at least the damages element of this cause of action but for Adobe's protected activity in filing this lawsuit. Similarly, in the unfair competition counterclaim, the only specific injury-in-fact that Wowza alleges it suffered as a "direct and proximate result of Adobe's unlawful, unfair and/or fraudulent business acts" is "the costs of defending against this action." Id. at ¶ 51. Thus, but for Adobe's petitioning activity, Wowza has not adequately plead that it has standing to pursue a UCL claim. See Cal. Bus. & Prof. Code § 17204.

### 2. Probability of Prevailing on the Merits

Because the Court concludes that the fraud and UCL counterclaims arise from protected activity, the burden shifts to Wowza to show a probability of prevailing on the merits of these counterclaims at trial. Navellier, 29 Cal. 4th at 95. To sustain its burden, Wowza must have "stated and substantiated a legally sufficient claim." Briggs v. Eden Council for Hope & Opportunity, 19 Cal. 4th 1106, 1123 (1999) (internal quotations and citations omitted).

The Court has already concluded that Wowza has failed to state legally sufficient counterclaims, and that the new counterclaims are barred by the litigation privilege and the Noerr-Pennington doctrine. Accordingly, Wowza has failed to establish that it is likely to prevail on its new counterclaims,

United States District Court
For the Northern District of California

and the Court GRANTS Adobe's anti-SLAPP motion.  Wowza may move for leave to re-assert these claims, provided it is able to meet the good cause standard under Rule 16 and to remedy the deficiencies identified by the Court, as set forth above.

CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Adobe's motion to strike the new counterclaims and affirmative defenses as unauthorized amendments, GRANTS Adobe's motion to dismiss, and strikes the fraud and UCL counterclaims as SLAPPs.  The Court does not strike Wowza's new affirmative defenses of prosecution history laches, patent exhaustion and failure to mark as applied to Adobe's claims regarding the '426 and '287 patents.

Wowza may move for leave to re-assert its counterclaims, provided that it is able to show good cause under Rule 16 and to remedy truthfully the deficiencies identified by the Court above. If Wowza seeks to amend its Sherman Act counterclaim, it must allege properly antitrust injury and that Adobe acted with the requisite subjective intent in filing this lawsuit to satisfy the sham litigation exception to the Noerr-Pennington doctrine.  If Wowza seeks to amend its fraud and UCL counterclaims, it may not base these counterclaims on Adobe's pre-litigation correspondence or its filing of the instant lawsuit.  Wowza may base these counterclaims only on the issuance of the press release and open license, provided that Wowza is able to allege plausibly that material misrepresentations were made therein and that the other elements of these counterclaims were met.

As noted above, under the anti-SLAPP statute, Adobe is entitled to attorneys' fees and costs.  It may seek fees and costs in accordance with Civil Local Rule 54-1 and 54-5.

IT IS SO ORDERED.

Dated:  9/6/2012

CLAUDIA WILKEN
United States District Judge